**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 1:25-cv-03135-RMR-KAS

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,

Plaintiff,

v.

DEREK SCHWARTZ,

Defendant.

---

**ORDER**

---

Plaintiff Teachers Insurance and Annuity Association of America ("TIAA") filed this action against Defendant Derek Schwartz ("Schwartz") alleging that Schwartz violated his Confidentiality and Non-Solicitation Agreements ("Agreement") by soliciting clients and misusing TIAA's confidential information. ECF No. 4 at 1-2. After initiating this suit, TIAA filed the instant Motion for Temporary Restraining Order and Preliminary Injunction ("TRO"), ECF No. 4, and Motion for Expedited Discovery, ECF No. 6.[1] For the reasons stated below, Plaintiff's Motions are denied.

[1] Defendant filed a Response to the TRO, ECF No. 20, and Plaintiff filed a Reply, ECF No. 22. Defendant also filed a Response to the Motion for Expedited Discovery, ECF No. 19.

## I. BACKGROUND

TIAA is a New York life insurance company. ECF No. 1 ¶ 1. TIAA first employed Schwartz as a Portfolio Manager in its Denver, Colorado office in March 2022. ECF No. 1 ¶ 2; ECF No. 4 at 2; ECF No. 20 at 2. Schwartz lives and works in Colorado and worked in Colorado during his entire employment at TIAA. ECF No. 20 at 2. TIAA provided Schwartz with training, compensation, benefits, and access to TIAA's clients. ECF No. 4 at 2. As part of his employment, Schwartz signed the Agreement, which contained confidentiality and non-solicitation provisions. *Id.* Schwartz provided his notice of resignation on August 1, 2025, to join One Capital Management, LLC ("One Capital"), a competitor of TIAA. *Id.* at 3.

Pursuant to a 30-day notice provision in the Agreement, Schwartz remained a TIAA employee through August 31, 2025. *Id.* On August 4, 2025, TIAA sent Schwartz correspondence including the Agreement and demanded that he comply with the non-solicitation, confidentiality, and other obligations of the Agreement. *Id.* Schwartz informed TIAA that he would abide by these contractual obligations and that he did not have confidential TIAA information on August 6, 2025. *Id.*

On September 18, 2025, a client advised TIAA that Schwartz reached out to him on his personal phone. *Id.* at 4. The client stated that Schwartz left a voicemail message providing the client with his new contact information at One Capital. *Id.* When the client did not return Schwartz's message, Schwartz reached out to the client via LinkedIn. *Id.* The client confirmed that he did not provide Schwartz with his personal information and believed that Schwartz accessed his personal information through TIAA channels. *Id.*

TIAA also alleges that a second TIAA client posted on Schwartz's LinkedIn page that she was sorry for missing his calls and that a third TIAA client confirmed that Schwartz reached out to her. *Id.* Ultimately, TIAA alleges the amount in controversy from Schwartz's conduct exceeds $75,000, and this Court has jurisdiction under 28 U.S.C. § 1332(a).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a district court to enter preliminary injunctions. Fed. R. Civ. P. 65(a). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018). A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

First, a plaintiff must establish a substantial likelihood of prevailing on the merits of his claims. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). The parties dispute whether New York or Colorado law governs the Agreement. TIAA argues New York law should govern, because the Agreement contains a New York choice-of-law provision. ECF No. 4 at 5. Schwartz contends that the New York choice-of-law provision does not control and that Colorado has a materially greater interest in the dispute. ECF No. 20 at 7.

"In a diversity action we apply the conflict-of-laws rules of the forum state." *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). In this case, Colorado is the forum state, and the conflict-of-laws rules of Colorado apply. Colorado follows the Restatement (Second) of Conflict of Laws (1971) for contract actions. *Zynex Med., Inc. v. Frabotta*, No. 21-CV-1076-RMR-KLM, 2022 WL 1211876, at *2 (D. Colo. Mar. 4, 2022). Under the Restatement (Second) § 187, the law of the state chosen by the parties to govern their contractual rights will be applied unless: (1) the chosen state has no substantial relationship to the parties to the transaction and there is no other reasonable basis for the parties' choice; or (2) application of the law of the chosen state would be contrary to a fundamental policy of the state which has a materially greater interest than the chosen state in the determination of the particular issue. . . ." *Id.*

Here, the Agreement contains a New York choice-of-law provision. TIAA is a New York-based company and employed Schwartz, making New York a state of substantial

relationship to the parties. However, Schwartz argues that Colorado has a "materially greater interest in the dispute" and, thus, Colorado law should apply. ECF No. 20 at 7. To support his claim, Schwartz points to the fact that he worked in TIAA's Denver office, the alleged solicitation conduct occurred in Colorado, and the clients at issue are Colorado clients. *Id.* Schwartz relies on *King*, where the Tenth Circuit analyzed an employment contract between a Colorado employee and a New Jersey corporation. *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 581 (10th Cir. 2007). The agreement in *King* contained a provision stating that "all matters arising in connection with [the agreement] shall be governed by the law of the State of New Jersey and shall be subject to the jurisdiction of the New Jersey Courts." It also established a one-year non-solicitation period following termination. *Id.*

In determining whether New Jersey or Colorado applied to the agreement, the Tenth Circuit first found that Colorado indeed had a "materially greater interest in the issue," because the former employee was a resident of Colorado, signed the contract in Colorado, and solely worked in Colorado. *Id.* at 585. The same applies in this case—Schwartz is a resident of Colorado and solely worked in Colorado. Thus, Colorado does have a greater interest in the present dispute. However, the inquiry does not end there. Next, the Court must also find that the application of New York's noncompete provisions would be "contrary to a fundamental policy" of Colorado. Colorado's noncompete statute from March 2022, when the Agreement was signed, generally states that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void." Colo. Rev. Stat.

§ 8-2-113(2) (2022).[2] Additionally, "Colorado law treats non-solicitation clauses as covenants not to compete." *Edwards Lifesciences LLC v. Thompson*, No. 24-CV-02558-RMR-KAS, 2025 WL 2045423, at *11 (D. Colo. June 18, 2025) (citing *Saturn Systems, Inc. v. Militare*, 252 P.3d 516 (Colo. App. 2011); *see also Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1134 (D. Colo. 2018). Therefore, both non-compete and non-solicitation provisions are typically unenforceable in Colorado. On the other hand, New York law provides that "[c]ovenants not to compete should be strictly construed because of the 'powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood." *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 370 (2015).

However, Colorado provides "four narrow exceptions to its ban on covenants not to compete: those for the purchase and sale of a business, for the protection of trade secrets, for recovery of training and education costs for an employee who served for less than two years, and for executive or management personnel." *Kent*, 352 F. Supp. 3d at 1133 (citing Colo. Rev. Stat. § 8-2-113(2)). In this case, the non-compete and non-solicitation provisions in the Agreement do not fall within these four narrow exceptions. The Agreement does not involve the purchase or sale of a business or protection of trade secrets. Schwartz was employed at TIAA for over two years and was not an executive or management personnel member within the company. Thus, the non-competition and non-solicitation provisions of the Agreement are unenforceable in Colorado. New York, which

---

[2] Colo. Rev. Stat. § 8-2-113 was amended in August 2022. *See* 2022 Colo. Legis. Serv. Ch. 441 (H.B. 22-1317).

strictly construes covenants not to compete as outlined in *Brown & Brown*, would more readily enforce the restrictive covenants in the Agreement. This distinction in approach suggests that applying New York law would be contrary to fundamental policy of Colorado. Therefore, Colorado law applies to the Agreement, and given Colorado's stance on restrictive covenants, TIAA is unlikely to succeed on the merits of its claim.

**B. Irreparable Harm**

The Tenth Circuit has explained that "[t]o merit preliminary injunctive relief, a movant must present a significant risk it will experience harm that cannot be compensated after the fact by money damages. . . . The injury must also be of such imminence that there is clear and present need for equitable relief to prevent irreparable harm." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) (citations omitted, cleaned up). "Demonstrating irreparable harm is not an easy burden to fulfill." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017).

TIAA argues it will suffer irreparable harm without injunctive relief, because "damages are difficult to ascertain," "the harm flowing from any retention or disclosure by Schwartz of client information is irreparable," and "injunctive relief is necessary to discourage similarly-situated employees from violating their obligations." ECF No. 4 at 11-13. Schwartz contends that TIAA cannot claim irreparable harm because the clients he allegedly contacted remain TIAA clients. ECF No. 20 at 3-4.

Based on the record before the Court, it appears that Schwartz likely contacted three TIAA clients. But none of these clients engaged with him. To establish irreparable harm for the purposes of a preliminary injunction, a movant must present a "significant

risk" of harm "that cannot be compensated after the fact by money damages." Without evidence that TIAA has indeed lost clients, TIAA has failed to demonstrate a significant risk of harm. Even if TIAA did lose clients as a result of Schwartz's conduct, the harm from that loss could be calculated and compensated by money damages. As Schwartz indicates, TIAA could identify the clients who transferred assets and calculate the loss from those transfers. TIAA cites out-of-circuit caselaw suggesting that calculating the loss from "every investment that reasonably flowed from the exploitation" is nearly impossible. ECF No. 11-12 (citing *Merrill Lynch v. Stidham*, 658 F.2d 1098, 1102 (5th Cir. 1981)). The events in this case do not suggest that Schwartz's alleged "exploitation" has or will result in an unidentifiable number of transferred investments. Instead, TIAA's allegations point to three specific clients, whose investments could presumably be calculated. Therefore, TIAA has failed to establish irreparable harm.

**C. Balance of Hardships and Public Interest**

Finally, TIAA argues that the "benefit of injunctive relief to TIAA far outweighs any detriment to Schwartz." ECF No. 4 at 13. TIAA cites to several out-of-circuit cases where courts found the balance of hardships and public interest favored the movant. *Id.* at 13-14 (citing *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992); *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1354 (D.N.J. 1990), *aff'd*, 932 F.2d 960 (3d Cir. 1991)). The Court is not bound by these decisions or persuaded that the balance of hardships or public interest favor TIAA.

With respect to balance of hardships, Judge Arguello determined n *Baggot* that the movant had demonstrated that the threatened injury outweighed any harm to the defendant, because the "Employment Agreement d[id] not broadly restrict her from working anywhere in the healthcare industry." *Exec. Consulting Grp., LLC v. Baggot*, No. 118CV00231CMAMJW, 2018 WL 1942762, at *8 (D. Colo. Apr. 25, 2018). However, the circumstances in *Baggot* are distinguishable from those in this case. Baggot was a "Principal" and part of the movant's "management team and contributed to [the company's] strategies at a firm-wide level." *Id.* at *2. Because of her role within the company, the non-competition provision of her agreement was enforceable and fell within the "executive or management personnel" narrow exception. *Id.* at *6. Thus, Judge Arguello reasonably concluded that the balance of the equities favored the company. *Id.* at *8. Here, the Court has already determined that none of the exceptions for Colorado's non-compete statute apply in this case and that the non-compete and non-solicitation provisions are likely unenforceable under Colorado law. Therefore, the balance of the hardships does not move the needle in favor of TIAA.

Additionally, the public interest does not support TIAA's claim. When seeking a preliminary injunction, a movant's right to preliminary injunctive relief must be "clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). To be sure, there is a public interest for companies like TIAA to protect their confidential information and clientele. However, TIAA has failed to clearly and unequivocally demonstrate that the public interest is so great that it necessitates a preliminary injunction.

**D. Motion for Expedited Discovery (ECF No. 6)**

TIAA also requests expedited discovery in the TRO, ECF No. 4, and separately in its Motion for Expedited Discovery, ECF No. 6. Since the filing of these Motions, Magistrate Judge Starnella has entered a Scheduling Order, ECF No. 25, and an Amended Scheduling Order, ECF No. 39. The Amended Scheduling Order provides a September 14, 2026 deadline for fact discovery and a January 13, 2027 expert discovery deadline. ECF No. 39. Based on these deadlines and the Court's ruling on TIAA's TRO, it does not appear that TIAA's requested expedited discovery for preliminary relief is necessary. Therefore, the Motion for Expedited Discovery is denied as moot.

## IV. CONCLUSION

For the reasons stated herein, it is ORDERED that TIAA's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO"), ECF No. 4, is **DENIED**. It is FURTHER ORDERED that TIAA's Motion for Expedited Discovery, ECF No. 6, is **DENIED AS MOOT.**

DATED: September 1, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge